1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Angellee Chen, a single woman,              No. 12-CV-00814-PHX-GMS

10                    Plaintiff,                 **ORDER**

11  v.

12  Maricopa County, a political sub-division
    of the State of Arizona; and Mark Fischione
13  (individually)

14                    Defendant.

15         Pending before the Court is Defendants' Motion to Dismiss. (Doc. 28.) For the

16  reasons set forth below, Defendants' Motion is granted in part and denied in part.

17                          **FACTUAL BACKGROUND**

18         This case arises out of an employment relationship between Plaintiff Dr. Angellee

19  Chen and the Maricopa County's Office of the Medical Examiner (the "OME"). Chen

20  worked as a forensic pathologist for the OME from July 2007 until her employment was

21  terminated in June 2011. (Doc. 24 ¶ 5.) In October 2009, Chen met with the OME's

22  director, David Boyer, and Human Resources Administrator, Espy Gamez, regarding

23  concerns she had about the OME and her supervisor and Chief Medical Examiner, Dr.

24  Mark Fischione. (*Id.* ¶ 11.) She complained that OME medical examiners had to manage

25  a heavy caseload because of recent reductions in force. (*Id.* ¶ 15.) Regarding Fischione,

26  she expressed concern that he allegedly worked on significantly fewer cases for the OME

27  because he was providing interim pathology services for the Yavapai County OME and

28  had multiple private projects. (*Id.*) The Maricopa OME had approved Fischione's work

for the Yavapai OME. (*Id.* ¶ 9.) Chen also complained that Fischione treated male pathologists more favorably. (*Id.* ¶ 13.) She complained that Fischione had targeted another female pathologist, Dr. Ann Bucholtz, for termination in part because of her gender and that he took male pathologists to sporting events to the exclusion of the female pathologists. (*Id.*)

On January 7, 2010, Boyer addressed Chen's concerns at a medical examiner team meeting, allegedly stating that pathologists were allowed to work for other counties if they were current with their Maricopa OME cases and that any discriminatory activity in the OME was unintentional. (*Id.* ¶ 18.) Chen discussed the meeting with her colleague Dr. Diane Karluk and both expressed dissatisfaction at how Chen's concerns were handled. (*Id.* ¶¶ 19-20.) On February 3, 2010, Fischione summoned Chen to a meeting which included Boyer and Gamez. At the meeting, Fischione gave Chen a "Final Written Warning" (the "Warning") which he described as the equivalent of a suspension without pay. (*Id.* ¶ 22.) Chen allegedly had not been disciplined before and Fischione had not addressed his concerns with Chen prior to the Warning. (*Id.*)

Over the next year, Chen made several complaints regarding Fischione, Boyer and the OME. On May 11, 2010, Chen complained to Alex Jamison, the Maricopa County Ombudsman, regarding Fischione's Yavapai contract and the Warning he had given her. (*Id.* ¶ 26.) On August 8, 2010, Chen allegedly left a message on Maricopa County's anonymous hotline regarding her concerns about Fischione's Yavapai contract and his discriminatory conduct towards females and minorities. (*Id.* ¶ 28.) On January 26, 2011, Chen complained to Erin Erskine of the Human Resources Department ("HR") that the Warning was given in retaliation for her discrimination complaint. (*Id.* ¶ 30.) Finally on May 10, 2011, Chen filled out Maricopa County's annual Employee Satisfaction Survey in which she complained about the alleged mismanagement of the OME, citing a discriminatory environment towards females and minorities, Fischione's conflicts of interest with outside projects, and the lack of responsiveness to her complaints by Boyer and other supervisors. (*Id.* ¶ 32.)

In April 2011, Dr. Jeffrey Nine applied for the Yavapai OME medical examiner position. (*Id.* ¶ 34.) Fischione served on the evaluation committee for that position while providing interim services until it was filled, a fact which was known to the OME. (*Id.* ¶¶ 7, 9, 10.) On June 7, 2011, Fischione signed a renewal contract to provide services through 2012, which was soon to be considered by the Yavapai County Board of Supervisors. (*Id.* ¶¶ 36-37.) He allegedly commented to Karluk that Nine would likely be offered the position to begin in January 2012, vitiating the need for his interim services. (*Id.* ¶ 35.)

On June 20, 2011, Chen was summoned to Boyer's office and Fischione gave her notice of her termination for "insubordination." (*Id.* ¶¶ 38-40.) In the following days, Fischione allegedly told Karluk that Chen's termination was related to "business"  but told others that Chen was terminated because she was "trouble" and he was unhappy about Chen's complaints regarding him, Boyer and the OME. (*Id.* ¶¶ 41-43.)

On July 4, 2011, Fischione allegedly told another examiner, Dr. Robert Lyon, that he had not informed Nine about the OME's new opening created by Chen's termination. (*Id.* ¶ 44.) But Fischione expressed hope that Nine would view the job posting and chose to work at the Maricopa OME over the Yavapai OME. (*Id.*) On March 28, 2012, Nine allegedly told Chen that Fischione had contacted him when he applied for the Yavapai OME position to recruit him for the Maricopa OME instead. (*Id.* ¶ 46.)

Chen filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 25, 2011.[1] (Doc. 31-1, Ex. A.) Chen filed a notice of claim for wrongful termination with the Maricopa County and Yavapai County Board of Supervisors, and with Fischione, Boyer, and the Manager of the Maricopa County

---

[1] The Court takes judicial notice of the EEOC charge of discrimination and the notice of claim because they are documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citation omitted). However, the parties offer additional evidence beyond the Complaint. The Court will not consider those documents in the context of a Rule 12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision).

1    Office of Research and Reporting, Ken Andersen, on December 13, 2011. (Doc. 28-1,

2    Ex. 2.) Chen received a notice of right to sue from the EEOC on January 18, 2012. (Doc.

3    24-2.)

4         Chen brought this suit on April 18, 2012 and filed her Second Amended

5    Complaint on October 2, 2012, alleging the following counts against Defendants

6    Maricopa County and Mark Fischione: (1) Title VII retaliation; (2) First Amendment

7    retaliation; (3) Arizona Civil Rights Act ("ACRA") retaliation; (4) wrongful termination

8    pursuant to A.R.S. § 23-1501(3)(b); (5) wrongful termination pursuant to A.R.S. § 23-

9    1501(3)(c)(iii); (6) tortious interference with contract; and (7) wrongful denial of access

10   to public records pursuant to A.R.S. § 39-121.02(A). On November 5, 2012, Defendants

11   moved to dismiss Chen's Complaint.

12                                    **DISCUSSION**

13   **I.    LEGAL STANDARD**

14        To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil

15   Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a

16   "formulaic recitation of the elements of a cause of action;" it must contain factual

17   allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl.*

18   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain

19   detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

20   plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.

21   2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

22   plaintiff pleads factual content that allows the court to draw the reasonable inference that

23   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

24   (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a

25   sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not

26   "permit the court to infer more than the mere possibility of misconduct, the complaint has

27   alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal

28   quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II.   NOTICE OF CLAIM

Arizona law bars any claim against a public employee unless the claimant files a notice of claim with the public employee within 180 days of the incident from which the claim arose. A.R.S. § 12–821.01(A). A claimant may file the notice by delivering a copy of the claim to an individual personally or to an agent authorized to receive service of process, or by leaving copies at that individual's "usual place of abode." Ariz. R. Civ. P. 4.1(d). "Compliance with the notice provision of § 12–821.01(A) is a mandatory and essential prerequisite to such an action . . . ." *Harris v. Cochise Health Sys.*, 215 Ariz. 344, 351, 160 P.3d 223, 230 (Ct. App. 2007) "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of [the statute]." *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527, 144 P.3d 1254, 1256 (Ct. App. 2006).

Before bringing state law claims against Fischione, Chen was required by statute to file a notice of claim within 180 days after her cause of action accrued. Chen was terminated on June 20, 2011. She makes no assertion that her state law claims accrued on any other date. On December 13, 2011, Chen routed a copy of the notice of claim to Fischione through the receptionist at the Maricopa OME, his place of employment. However, Defendants contend that Fischione was never personally served at his office or his home and "he did not authorize anyone to accept service of process for claims being asserted against him individually." (Doc. 28 at 3; Doc. 28-1, Ex. 1 ¶¶ 4, 5.) Chen does not allege the receptionist with whom she left the notice of claim was authorized to accept

service for Fischione regarding personal legal matters. She alleges that it was an accepted practice at the Office to receive legal process through the receptionist. (Doc. 31-2, Ex. 3 ¶¶ 3-8.) But delivering the notice of claim in that manner did not satisfy the requirements of A.R.S. § 12–821.01(A). *See Simon v. Maricopa*, 225 Ariz. 55, 62, 234 P.3d 623, 630 (Ct. App. 2010) ("[S]trict compliance with A.R.S. § 12–821.01(A) is required and substantial compliance is insufficient.")

Further, the receptionist was not an ostensible agent of Fischione upon whom Chen could reasonably effect service of process. Chen has not alleged that Fischione represented that the receptionist was his agent or would accept service on his behalf. *Grand Canyon Resort Corp. v. Drive-Yourself Tours, Inc.*, CV-05-03469-PHX-SMM, 2006 WL 1722314, *6 (D. Ariz. June 22, 2006) ("Arizona courts have only allowed service on an ostensible agent where reliance on a defendant's representations about an individual's apparent authority was reasonable.") (citing *Koven v. Saberdyne Sys., Inc.,* 625 P.2d 907, 911 (Ct. App. 1980)).

Fischione admits that he received the notice of claim from Chen in his mailbox at the Office. (Doc. 28, Ex. 1 ¶ 3.) However, "actual notice" does not excuse Chen's failure to comply with the statutory requirements of A.R.S. § 12–821.01(A). *Falcon ex rel. Sandoval*, 213 Ariz. at 527. Chen's state law claims against Fischione for ACRA retaliation, wrongful termination, and tortious interference with contract are therefore barred and dismissed.

## III.    TITLE VII AND ACRA RETALIATION

Defendants argue that Chen has failed to allege a prima facie case of retaliation under either Title VII or the ACRA. Title VII prohibits retaliation against an employee because she has opposed any employment practice made unlawful by Title VII, or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to Title VII enforcement. 42 U.S.C. § 2000e–3(a). Chen may assert a claim of retaliation by alleging facts that, if true, would demonstrate that: (1) she engaged in an activity protected by Title VII; (2) her employer

subjected her to a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). Title VII imposes civil liability only on employers, not employees. *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir. 1993).

As to Chen's remaining ACRA retaliation claim against Maricopa County, the Act is "generally identical to Title VII, and therefore federal Title VII case law is persuasive in the interpretation of the Arizona Civil Rights Act." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (citing *Higdon v. Evergreen Int'l Airlines, Inc.,* 138 Ariz. 163, 165, 673 P.2d 907, 909-10, n.3 (1983)) (internal quotations omitted); *see Timmons v. City of Tucson*, 171 Ariz. 350, 354, 830 P.2d 871, 875 (Ct. App. 1991). The ACRA's prohibition against retaliation, A.R.S. § 41-1464(A), is "essentially identical" to the prohibition under Title VII. *Storey v. Chase Bankcard Services, Inc.*, 970 F. Supp. 722, 731 (D. Ariz. 1997). The Court will analyze Plaintiff's retaliation claims under federal law.

### A.    Protected Activity

Informal and internal complaints that a supervisor has violated Title VII "constitute a protected activity, such that actions taken against [a plaintiff] after these initial complaints are appropriately the subject of [a] retaliation claim." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (internal citation omitted); *see E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009). Defendants admit that Chen engaged in protected activity in October 2009 when she complained to OME director David Boyer that Fischione generally treated male pathologists more favorably and created an atmosphere of discrimination, that he had targeted another female pathologist for a layoff in part because of her gender, and that he had taken several of the male pathologists to social events to the exclusion of the female pathologists. Chen provided documentation of her concerns to Boyer in November 2009 and those concerns were addressed in a January 2010 team meeting. Chen contends that she also engaged in protected activity ten months later when she left a message on

1    Maricopa County's anonymous hotline on August 8, 2010, made a verbal complaint to
2    HR on January 26, 2011, and filled out an annual employee satisfaction survey on May
3    10, 2011, all to report discriminatory conduct. These internal complaints constitute
4    protected activity and satisfy the first requirement for stating a prima facie case of
5    retaliation.

6    **B.    Adverse Employment Action**

7         Under the second prong, Chen must allege that Defendants subjected her to a
8    materially adverse employment action. "The antiretaliation provision protects an
9    individual not from all retaliation, but from retaliation that produces an injury or harm."
10   *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). An action is
11   materially adverse if it could "dissuade a reasonable worker from making or supporting a
12   charge of discrimination." *Id.* at 68.

13        In her Complaint, Chen alleges that Defendants took two adverse actions against
14   her: a formal warning given to her by Fischione and her termination from employment.
15   On February 3, 2010, Fischione gave Chen a "Final Written Warning" which was "the
16   equivalent of suspension without pay." (Doc. 24 ¶¶ 21-22.) Chen alleges she was "written
17   up . . . after complaining about discrimination." (Doc. 28, Ex. 3 ¶ 18.) The Warning was
18   sufficiently severe to constitute a materially adverse employment action.

19        However, Chen did not timely file her charge of discrimination as it relates to her
20   Warning. Section 2000e–5(e)(1) requires that a Title VII plaintiff file a charge with the
21   EEOC 180 days "after the alleged unlawful employment practice occurred." Chen was
22   issued the Warning on February 3, 2010 but did not file a charge until November 25,
23   2011, which is beyond the statutory period. Chen argues that because the allegedly
24   discriminatory and retaliatory conduct continued until her termination in June 2011, the
25   Court should toll the statute of limitations period. However, Title VII "precludes recovery
26   for discrete acts of discrimination or retaliation that occur outside the statutory time
27   period" and the continuing violation doctrine does not apply to retaliation claims.
28   *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Thus, Chen may

1  not base her retaliation claim on the Warning as an adverse employment action because
2  she did not timely file a charge of discrimination.

3         The second adverse action is that Defendants terminated Chen from employment
4  on June 20, 2011. Chen's termination is a materially adverse and timely-filed action upon
5  which she may base her retaliation claim. *See Burlington Industries, Inc. v. Ellerth* 524
6  U.S. 742, 761 (1998).

7         **C.    Causation**

8         Defendants argue that because Chen does not allege that Fischione or Boyer knew
9  about her anonymous hotline complaint, employee survey and verbal complaint to HR,
10  her retaliation claim lacks causation. Essential to the causal link are allegations that "the
11  employer was aware that the plaintiff had engaged in the protected activity." *Cohen v.*
12  *Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (internal citation omitted). Chen
13  alleges that Fischione told "at least one person" that she was terminated because she was
14  trouble, and he was unhappy about her complaints about him, Boyer and the OME. (Doc.
15  24 ¶ 43.) She asserts that "Dr. Fischione chose to terminate me over any other pathologist
16  because he and Mr. Boyer knew (either directly or from communications with other
17  senior OME management personnel) about my prior complaints about their misconduct."
18  (Doc. 31-2, Ex. 4, ¶ 59.) At this stage in the litigation, the causal link is construed
19  broadly; a plaintiff must merely allege "that the protected activity and the negative
20  employment action are not completely unrelated." *See Emeldi v. Univ. of Oregon*, 698
21  F.3d 715, 726 (9th Cir. 2012) (citing *Poland v. Chertoff*, 494 F.3d 1174, 1181 n.2 (9th
22  Cir. 2007)).Chen's factual allegations are sufficient to draw a reasonable inference that
23  her supervisors were aware of her complaints. *See Iqbal,* 556 U.S. at 678. She has stated
24  a claim for Title VII and ACRA retaliation against Maricopa County.

25  **IV.    § 1983 CLAIMS FOR FIRST AMENDMENT RETALIATION**

26         Chen alleges that the OME and Fischione violated her First Amendment rights for
27  "complaining about conduct which she reasonably believed was illegal, an abuse of
28  authority or otherwise improper." To state a claim against a government employer for

violation of the First Amendment, Chen must show that: (1) she engaged in protected speech; (2) her employer took adverse employment action; and (3) her speech was a substantial or motivating factor for the adverse employment action. *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)). Further, "every person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983; *see Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978).

### A.   Protected Speech

Chen must first allege facts that she engaged in protected speech. An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968). This determination is to be made with reference to "the content, form, and context" of the speech. *Connick v. Myers*, 461 U.S. 138, 147 (1983).

Although the Ninth Circuit "has defined the scope of the public concern element broadly," there are limits. *Id.* at 709-10. "Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (internal quotations omitted). However, speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *Id.*

Chen alleges that in her October 2009 meeting with Boyer, she complained about the increased amount of cases that each medical examiner had to allegedly handle because of a recent reduction in force. She was specifically concerned about Fischione's multiple outside projects resulting in him handling fewer cases with the OME. As Chief Medical Examiner, Fischione's lack of attention to the OME's cases allegedly increased an already strained workload for examiners. Chen's complaint to Boyer addressed

subjects of public concern. She revealed concerns about the alleged mismanagement of the OME's workforce and cases as well as the Chief Medical Examiner's allegedly competing interests with outside projects leading to unmanageable demands on the team. *See Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010) ("Subjects of public concern include unlawful conduct by a government employee and the misuse of public funds, wastefulness, and inefficiency in managing and operating government entities.").

Chen's internal complaint does not lose First Amendment protection "simply because [it] concerns the subject matter of [her] employment." *Id.* (citing *Freitag v. Ayers,* 468 F.3d 528, 545 (9th Cir. 2006)). Further, that Chen "chose to convey her views privately rather than publicly is not determinative of whether her expression is entitled to protection." *See Thomas v. City of Beaverton,* 379 F.3d 802, 810 (9th Cir. 2004); *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public.").

However, "to qualify as protected speech under the first element, the employee must have uttered the speech as a citizen, not an employee." *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (internal quotation omitted). "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (internal citation and quotations omitted). Chen did not have a duty to complain about alleged mismanagement of the OME and Fischione's competing interests. While her complaints were related to her duties, at this stage of the litigation, Chen has alleged facts that she engaged in protected speech.

### B.     Adverse Employment Action

Under the second prong for stating a First Amendment retaliation claim, Chen

must allege that the OME took an adverse employment action against her. "[A] government act of retaliation need not be severe and it need not be of a certain kind." *Coszalter,* 320 F.3d at 975. "Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights." *Id.* A plaintiff can establish a valid claim of retaliation by showing that "the actions taken by the defendants were reasonably likely to deter [a plaintiff] from engaging in protected activity under the First Amendment." *Id.* at 976 (internal quotations omitted). Chen alleges that on February 3, 2010, Fischione gave her a "Final Written Warning" which was the equivalent of suspension without pay. Chen was ultimately terminated from employment on June 20, 2011. Both the Warning and the termination constitute adverse employment actions. *See Anthoine*, 605 F.3d at 750 (holding that "a verbal warning for a 'pattern of incidents of insubordination,' an unsatisfactory evaluation, and termination of . . . employment" all constitute adverse employment actions); *Ulrich v. City and Cnty. of San Francisco,* 308 F.3d 968, 977 (9th Cir. 2002) (holding that an adverse employment report is an adverse employment action constituting retaliation for protected speech).

### C.   Causation

The third prong of a First Amendment retaliation claim involves causation. Chen must allege that her protected speech was a substantial or motivating factor behind her Warning and termination. Regarding Chen's termination, Fischione told at least one person that she was terminated because she was "trouble" and he was unhappy about her complaints regarding him, Boyer and the OME. Thus Chen's Warning and termination were allegedly motivated by displeasure with her complaints. Taking Chen's allegations as true, she has stated a First Amendment retaliation claim against Fischione and Maricopa County.

## V.   WRONGFUL TERMINATION

The Arizona Employment Protection Act ("AEPA") provides that an employee has a claim against an employer for wrongful termination if "[t]he employer has terminated the employment relationship of an employee in violation of a statute of this

state." A.R.S. § 23-1501(3)(b); *Higgins v. Assmann Electronics, Inc.*, 217 Ariz. 289, 294, 173 P.3d 453, 458 (Ct. App. 2007).

Chen alleges in Count Four of her Second Amended Complaint that Fischione terminated her employment in violation of two Arizona statutes regarding the disclosure of conflicts of interest, A.R.S. § 38-503 and § 11-594(A)(9). A.R.S. § 38-503 states that: "[a]ny public officer or employee who has . . . a substantial interest in any decision of a public agency shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an officer or employee in such decision." A.R.S. § 11-594(A)(9) requires the county medical examiner to "[o]bserve all policies adopted by the board of supervisors regarding conflicts of interest and disclosure of noncounty employment." Chen asserts that Fischione had a substantial interest in terminating her employment because her termination gave him the opportunity to continue his interim medical services contract with the Yavapai OME. She alleges that in terminating her and creating an opening at the Maricopa OME, Fischione planned to lure away another examiner, Dr. Jeffrey Nine, from an open position with the Yavapai OME so Fischione could renew his contract with that office.

Chen has forfeited any state law claim for wrongful termination she may have had against Fischione due to her failure to timely serve him with a notice of claim. Thus, she must state a claim pursuant to A.R.S. § 23-1501(3)(b) against Maricopa County to survive Defendants' Motion. The Maricopa OME allegedly approved Fischione's interim contract with the Yavapai OME and was aware that he was on the evaluation committee for its medical examiner position. Further, Fischione had the authority to terminate Maricopa OME employees and he fired Chen. Nevertheless, Chen does not explain how the Maricopa OME violated the state conflict of interest statute. The statute pursuant to its own terms is only applicable to "any officer or employee" and the OME as an entity is neither an officer nor an employee. A.R.S. § 38-503(B); *see Maucher v. City of Eloy*, 145 Ariz. 335, 337, 701 P.2d 593, 595 (Ct. App. 1985) (noting that A.R.S. § 38–503 was passed to protect the public from self-dealing by public employees). In other words, the

Maricopa OME's act of terminating Chen's employment was not "in violation of" the conflict of interest statute. A.R.S. § 23-1501(3)(b). Chen does not allege that the Maricopa OME terminated her employment in violation of any other state statutes. Therefore, Chen has not stated a claim that Maricopa County wrongfully terminated her pursuant to A.R.S. § 23-1501(3)(b).

Chen also alleges she was wrongfully terminated for her internal complaint that Fischione was violating Arizona's anti-discrimination and conflict of interest laws. Under the AEPA, it is wrongful to terminate an employee for "[t]he disclosure by the employee . . . [that another] employee . . . has violated, is violating or will violate [state laws] to either the employer or . . . an employee of a public body . . . ." A.R.S. § 23-1501(3)(c)(ii). Chen complained to Boyer in October 2009 about Fischione's alleged conflict of interest arising from his medical services contract with the Yavapai OME as well as his discriminatory conduct. Fischione learned of Chen's complaint in January 2010 during a team meeting. Chen alleges that after her termination, Fischione told others that she was terminated because of her complaints about him. Because Fischione acted under the authority of the Maricopa OME in terminating her employment, Chen has stated a claim for wrongful termination against Maricopa County pursuant to A.R.S. § 23-1501(3)(c)(ii).

## VI.    PUBLIC RECORDS

Defendants contend that the Court should decline to exercise supplemental jurisdiction over Chen's public records claim because the facts underlying that claim are unrelated to the allegations surrounding the termination of her employment. The Court has supplemental jurisdiction over Chen's state law claims if they form part of "the same case or controversy" as her federal law claims. 28 U.S.C. § 1367(a). A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (internal citation and quotations omitted). In exercising its discretion to decline supplemental jurisdiction,

a district court must undertake a case-specific analysis to determine whether declining supplemental jurisdiction "comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness and comity." *Id.*

Chen's public records claim shares a common nucleus of operative fact with the remaining federal claims in this action. The public records that she requested from the OME were a subset of e-mails from her account and from the accounts of Boyer, Fischione, and Ken Anderson, manager of the Maricopa County Office of Research and Reporting. She requested those e-mails in order to develop the factual basis for her federal claims, of which the First Amendment retaliation cause of action remains. Thus, the Court has supplemental jurisdiction over Chen's public records claim.

Defendants argue that Chen has failed to sufficiently plead her public records claim because she alleges that documents were withheld from her inspection without providing a factual basis for that allegation. The public records statute provides a separate cause of action for "[a]ny person who has requested to examine or copy public records pursuant to this article, and who has been denied access to or the right to copy such records." A.R.S. § 39-121.02(A). The purpose of the public records law is to give the public "access to official records and other government information so that it may monitor the performance of government officials and their employees." *Phoenix New Times, L.L.C. v. Arpaio,* 217 Ariz. 533, 541, 177 P.3d 275, 283 (Ct. App. 2008). Thus, the statutes broadly define such records and presume that public records will be disclosed. *Griffis v. Pinal Cnty.,* 215 Ariz. 1, 4, 156 P.3d 418, 421 (2007).

Chen mailed a public records request to the custodian of the Office of Enterprise Technology on July 8, 2011 and to the Maricopa County Attorney's Office on July 29, 2011. She requested "limited e-mails" from her e-mail account along with those of Boyer, Fischione and Andersen. She was given the opportunity to inspect the requested records on three occasions between January 24, 2012 and March 7, 2012 at the County Attorney's Office. However, she alleges that "some records that [she] had requested were withheld and no information was provided about what was excluded and for what

reason." (Doc. 24 ¶ 97.)

Defendants contend that because Chen does not allege what documents she believes were wrongfully withheld or destroyed by them, her public records claim is purely speculative. Chen admits that Maricopa County produced documents in response to her requests on three separate occasions. She asserts that some records were withheld without describing the documents or types of documents that she was unable to inspect during her three visits, why they qualify as non-confidential public records, and her reason to believe they exist. *See Iqbal,* 556 U.S. at 663 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). She fails to state a claim to the extent she alleges the County withheld public records in violation of the statute.

Chen also claims the public records she inspected were available as of July 2011 but she was not given a reasonable explanation for the delay in filling her request. She seeks declaratory relief that such delay was a constructive denial of access and seeks costs and attorney fees pursuant to A.R.S. § 39–121.02(B). "Access to a public record is deemed denied if a custodian fails to promptly respond to a request for production of a public record." A.R.S. § 39–121.01(E). Arizona courts have interpreted the word "prompt" to mean "quick to act" or to produce the requested records "without delay." *Phoenix New Times*, 217 Ariz. at 538 (citing *West Valley View, Inc., v. Maricopa Cnty. Sheriff's Office,* 216 Ariz. 225, 230, 165 P.3d 203, 208 (Ct. App. 2007)). However, whether a government agency's response to a wide variety of public records requests was sufficiently prompt "will ultimately be dependent upon the facts and circumstances of each request." *Id.* (internal quotation and citation omitted). "The court may award attorney fees and other legal costs that are reasonably incurred in any action if the person seeking public records has substantially prevailed [on the merits]." A.R.S. § 39–121.02(B).

Chen alleges that the Communications Director for Maricopa County, Cari Gerchick, received her public records request on July 29, 2011. Gerchick then asked for

permission from the employees listed in Chen's request to produce the responsive e-mails on August 2, 2011. Chen claims that she inquired with Gerchick about the status of her requests numerous times between August 2, 2011 and December 15, 2011 to no avail. After contacting the Arizona Ombudsman Office on December 15, 2011 for assistance and speaking with Brandon Newton whom she was told "represented the County" on January 11, 2012, Chen was able to inspect the records she requested on January 24, 2012 at the County Attorney's Office. Thus Chen was allegedly required to wait 179 days after the County received her request on July 29, 2011 before it was filled. Defendants have not alleged that there were any extenuating circumstances or reasons for such a delay. Chen has sufficiently alleged that she was denied access to public records because the County failed to promptly respond to her request. *See Phoenix New Times, L.L.C.*, 217 Ariz. at 547 (finding that Maricopa County's delay in filling plaintiff's various public records requests, ranging from 49 to 143 days, was a wrongful denial of access under A.R.S. § 39–121.01(D)(1)).

Defendants contend that Chen's public records claim fails because she did not file a notice of claim as to these facts prior to bringing this action. *See* A.R.S. § 12–821.01(A). However, "[t]he notice of claim statute applies to a request for damages, rather than to a request for declaratory or injunctive relief." *Home Builders Ass'n of Cent. Arizona v. Kard*, 219 Ariz. 374, 381, 199 P.3d 629, 636 (Ct. App. 2008) (internal citations omitted). Chen requests declaratory relief that the County's delay in providing her access to the records violated the statute. (Doc. 24 at 17-18.) Non-compliance with the notice of claim statute does not preclude her from requesting costs and attorneys' fees in conjunction with her request for declaratory relief. *Long v. Humboldt Unified Sch. Dist. No. 22*, CV-09-8045-PHX-FJM, 2009 WL 1868561, at *2 (D. Ariz. June 29, 2009) (citing *Martineau v. Maricopa Cnty*, 207 Ariz. 332, 336-37, 86 P.3d 912, 916-17 (Ct. App. 2004) (holding that plaintiffs did not need to comply with the notice of claims statute where they sought declaratory relief even though they requested costs and attorneys' fees)). Thus, Chen has stated a claim for the delay in receiving access to public

records against Maricopa County.

## CONCLUSION

Defendants' Motion to Dismiss is granted as to Chen's claims against Mark Fischione for Title VII retaliation (Count One), ACRA retaliation (Count Three), wrongful termination pursuant to A.R.S. § 23-1501(3)(b) (Count Four) and A.R.S. § 23-1501(c)(iii) (Count Five), and tortious interference with contract (Count Six). The Motion is also granted as it pertains to Chen's wrongful termination claim pursuant to A.R.S. § 3-1501(3)(b) against the County (Count Four). The Motion is denied as to Chen's claims against Maricopa County and Fischione for First Amendment retaliation (Count Two). The Motion is also denied as to Chen's claims against Maricopa County for Title VII retaliation (Count One), ACRA retaliation (Count Three), and A.R.S. § 23-1501(c)(iii) (Count Five), and wrongful denial of access to public records pursuant to A.R.S. § 39-121.02(A) (Count Seven).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 28) is **granted in part and denied in part**.

Dated this 14th day of March, 2013.

G. Murray Snow
United States District Judge